Filed 11/17/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES MENIFEE III,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | H047473<br>(Santa Clara County<br>Super. Ct. No. C1365457)<br><br><br>ORDER MODIFYING OPINION<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

On the court's own motion (Cal. Rules of Court, rule 8.264(c)), it is ordered that the opinion filed herein on November 13, 2020, be modified as follows:

On page 10, replace the second sentence of the first full paragraph which begins with the words "That analysis was upended in 2016" with the following sentence: "That analysis was upended in 2016 by the California Supreme Court's decision in *Sanchez*, *supra*, 63 Cal.4th 665, which held that experts may not relate to the jury "case-specific" out-of-court statements to support the expert's opinion as those statements are, in fact, hearsay and as such are admissible only if a hearsay exception applies."

On page 12, in the first sentence of the first partial paragraph which begins with the words "too narrow a reading of *Sanchez*" replace the phrase "is an expert's reliance on hearsay evidence to form an opinion" with the phrase "was the expert's relation to the jury of hearsay evidence in support of the expert's opinion."

There is no change in the judgment.


Dated: _____          _____
                                              Premo, Acting P.J.



                                    _____
                                              Elia, J.



                                    _____
                                              Bamattre-Manoukian, J.


<u>Menifee v. Superior Court</u>
H047473

Filed 11/13/20 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES MENIFEE III,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>      Respondent;<br><br>THE PEOPLE,<br><br>      Real Party in Interest. | H047473<br>(Santa Clara County<br>Super. Ct. No. C1365457) |

Petitioner Charles Menifee seeks extraordinary writ relief from the trial court's order denying his Penal Code section 995[1] motion to dismiss gang enhancements and a gang participation charge pursuant to *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).

For the reasons explained below, while we agree that certain components of the gang expert's testimony were inadmissible under *Sanchez*, the remaining admissible evidence presented at the preliminary hearing was sufficient to hold Menifee to answer on the gang enhancement allegations and substantive gang participation charge. We will therefore deny the petition for writ of mandate and/or prohibition.

---

[1] Unspecified statutory references are to the Penal Code.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

## A.   *The information*

Menifee and his codefendants were charged by information filed on or about April 21, 2014, with offenses arising out of a home invasion robbery which occurred on September 12, 2013.  Menifee and the others were charged with first-degree robbery within an inhabited place acting in concert (§§ 211, 213, subd. (a)(l)(A); count 1); attempted first-degree robbery within an inhabited place acting in concert (§§ 664, 211, 213, subd. (a)(l)(A); count 2); first-degree burglary (§§ 459, 460, subd. (a); count 3); first-degree robbery within an inhabited place (§§ 211, 212.5, subd. (a); count 4); attempted robbery of an inhabited building (§§ 664, 211, 212.5; count 5); and active participation in a criminal street gang (§ 186.22, subd. (a); count 8).[2]  The information further alleged firearm and gang enhancements in connection with counts 1 through 5. (§§ 12022.53, subds. (b), (e)(1), 186.22, subd. (b)(1)(C).)

## B.   *Preliminary hearing testimony*

On September 12, 2013, at around 11:19 a.m., Santa Clara County Sheriff's Deputy Russell Lopez was patrolling in east San Jose when he received a dispatch call about an "in-progress residential burglary."  Lopez just happened to be within 50 yards of the address where the burglary was occurring, so he arrived quickly.  Lopez parked his vehicle and he could hear "noises" and "yelling" coming from the reported address.  He saw a black male, later identified as Randall Taylor, walk out the front door holding "household electronics[,] . . . [p]ossibly DVD players or laptops."  Lopez could see "several other" black males behind the man, but not well enough to describe them.  Lopez, who had his weapon drawn, yelled at Taylor to show his hands or put his hands

---

[2] Count 6 was dismissed at some unspecified time and count 7 was alleged only against one of Menifee's codefendants.

2

up.  Taylor froze, said something like " 'Oh, shit,' " then went back into the house, pushing the men behind him back inside as well before closing the door.

Within 20 seconds, the door reopened, and two women and a child came outside. One of the women called out that they had been robbed and that the men had firearms. Lopez, who was alone, had the women and the child lie down on the ground with their hands out.  He could hear noises coming from behind the house "consistent with people jumping fences" and he could see the wooden fence between the houses shaking. Lopez then saw several black males running along the rooftops of the houses behind the victims' home.  Once other officers arrived, they set up a perimeter and cleared the victims' home.

Lopez took a statement from one of the residents, A.M., who reported she lived at the house along with several other people.  Earlier that day, A.M. was in her bathroom when she saw a black man climb through her bedroom window.  The man was armed with a black handgun, which he pointed at her midsection and asked, " 'Where's your money?' "  Another three or four men came through the window, one of whom may have also been armed, and began searching her room.  The men left her bedroom, going into the living room, so A.M. locked her bedroom door behind them.  One of the men came back and broke her door open.  He had a gun and again asked her where her money and her wallet were before grabbing her by the arm and dragging her into the living room. Another woman, M.O., was in the living room already, along with one of her two grandchildren.

Santa Clara County Sheriff's Deputy Mark Daigre responded to the scene, along with his training officer, approximately 40 minutes after the initial dispatch.  Daigre took a statement from M.O., who told him she was at the residence babysitting her two grandchildren.  The youngest was sleeping in a back bedroom and M.O. was sitting in the living room with the oldest child when she heard "loud noises . . . coming from the kitchen area."  When she looked toward the kitchen, she "saw a black male holding a

3

gun." The man said, " 'I want all of your money and drugs. Where is [*sic*] all the drugs?' " M.O. saw "approximately four other black males emerge from the kitchen area."

The men began searching the residence and M.O. saw them break down the door to A.M.'s bedroom. They pulled A.M. into the living room. M.O. said the men grabbed three potted marijuana plants and headed out the front door. She heard one of them say " 'Shit,' " and the men ran back inside the house then out the back. M.O. grabbed her grandchild and ran out the front door. Within an hour or so of the incident, M.O. identified Menifee in a field identification as one of the men who robbed the house.

*C.     Gang expert testimony*

San Francisco Police Sergeant Derrick Jackson testified as an expert on San Francisco criminal street gangs in general, and specifically as an expert on a gang known as Double Rock. Jackson first documented Double Rock as a criminal street gang in 2004 and 2005, based on members' use of a common hand sign, as well as graffiti and posts on social media. Double Rock's principal territory in San Francisco is centered on the Alice Griffith Housing Developments but extended into surrounding neighborhoods to the north, east, and south as well.

As of September 12, 2013, Double Rock had between 50 and 100 members and associates. In addition to certain unique hand signs, Double Rock members will get tattoos which "spell out the word 'Rock,' 'Rock Solid,' '2 Rock' [or] 'Double Rock.' " Double Rock does not have written rules or a formal leadership structure, and its members do not pay taxes or are otherwise required to share the proceeds of their crimes with the gang as a whole. Members are primarily male and 90 percent of them are black, though the local "Polynesian community there . . . are associates of . . . Double Rock." According to Jackson, in order to become a member of Double Rock, an individual would have to commit criminal acts, especially predicate crimes, get tattoos that reference Double Rock, and associate with other validated Double Rock gang members.

4

Jackson testified that the primary criminal activities of Double Rock consist of "burglaries, robberies, auto burglaries, narcotics sales, possession for sales, possession of firearms, possession of firearms by convicted felons, homicides, attempted homicides, witness intimidation, threats" and home invasion robberies. Jackson had previously testified in two cases in which Double Rock gang members committed home invasions.

D.     *Evidence of predicate offenses*

The prosecution introduced into evidence certified copies of documents reflecting prior convictions in five separate San Francisco County Superior Court cases (exhibits 26-30) and Jackson testified regarding each of these offenses.

Exhibit 26 was a certified conviction in San Francisco County Superior Court Case No. 219212. Jackson testified that he had previously reviewed the police report corresponding to this conviction which involved officers responding to an auto burglary on November 11, 2012. In the process of escaping in a van, the suspects collided with a police vehicle and nearly ran over an officer who was on foot. In the ensuing investigation, Jackson reviewed video surveillance of the incident and identified Anthony Mims as the driver of the van. Jackson opined that Mims was a Double Rock gang member at the time of that offense.

Exhibit 27 was a certified conviction in San Francisco County Superior Court Case No. 204557. Jackson again testified he had reviewed the police report prepared in connection with this conviction. According to that report, on December 20, 2007, plainclothes officers observed what appeared to be an armed robbery. In pursuing one of the individuals involved, subsequently identified as William Jones, the officers saw him drop a revolver on the ground. Jackson opined that Jones was a member of Double Rock at the time of this offense.

Exhibit 28 was a certified conviction in San Francisco County Superior Court Case No. 212437. Jackson testified about the underlying offense based on his review of the police report associated with the case. In that incident, on January 4, 2010, officers

responded to a report of a burglary in progress at a home. Soon after officers arrived at the address, three suspects emerged from the residence. Police ordered the men to stay in place, but one of them, later identified as Paul Bellazain, turned and ran back inside. As an officer gave chase, he saw Bellazain discard what turned out to be a semiautomatic pistol. Jackson opined that Bellazain was a member of Double Rock at the time of that offense.

Exhibit 29 was a certified conviction in San Francisco County Superior Court Case No. 2371025. Based on his review of the associated police report, Jackson testified that in June 2008 officers conducted a parole search of Anthony Mims in the Alice Griffith Housing Developments and found a vehicle key with a remote on his person. Anthony Mims denied that the vehicle belonged to him. Officers searched the vehicle which was parked nearby and discovered a semiautomatic firearm secreted inside the driver's side door panel. Jackson opined that Anthony Mims was a member of Double Rock on the date of the offense.

Exhibit 30 was a certified conviction in San Francisco County Superior Court Case No. 200720. Jackson, having read the associated police report, testified that on November 17, 2005, an undercover officer observed Bellazain exit a store and, when Bellazain lifted his arms, the officer noticed the butt of a pistol in Bellazain's waistband. The officer called for backup, and Bellazain walked away from the store. When other officers arrived, Bellazain returned to the store, but without the jacket he was wearing before. Officers did not find a pistol on Bellazain's person but discovered one inside a nearby parked car. DNA evidence linked that pistol to Bellazain. Jackson opined that Bellazain was a member of Double Rock on the date of the incident.

Jackson then testified about each of Menifee's codefendants and whether, in his expert opinion, that codefendant was currently a gang member. In each case, Jackson opined that the codefendant was a member of Double Rock. Jackson's opinion was based on each individuals' documented association with other known gang members,

6

their arrests for predicate crimes, and their tattoos. Jackson testified about the various police reports he reviewed describing officers' prior contacts with the codefendants. Those reports formed the basis for the individual gang validation forms he prepared for each of the codefendants.

As to Menifee, Jackson testified that he has been "aware of" Menifee since 2004. Menifee has several tattoos, including "7's up," "Money Motivated," "R.I.P. Terrell," and "M B," all of which are associated with the "700 Block," "Zoo Block," and the Double Rock gangs. In Jackson's opinion, Menifee "has demonstrated association with the Double Rock gang members" and there is "a clear alignment between [Zoo Block and Double Rock]" which "usually brings them together when criminal activity takes place."

Jackson testified about two prior police encounters[3] with Menifee based on his review of the police reports prepared in connection with those cases. In the first, which occurred on March 30, 2013, Menifee was stopped along with Taylor and Anthony Mims. Police observed "shards of glass consistent with evidence of an auto burglary although they couldn't prove it." To Jackson, the report indicated Menifee's "willingness to associate with documented Double Rock gang members."

The second encounter involved an incident on June 17, 2013, when officers tasked with auto burglary abatement observed a vehicle occupied by two black males, later identified as Menifee and Taylor. One of the men got out of the vehicle, went over to a parked car and "smashed the vehicle."[4] Menifee and Taylor were arrested, "charged and booked with possession of stolen property[] [and] auto burglary." Menifee was convicted of possession of stolen property and placed on probation.

---

[3] The prosecution sought to introduce evidence regarding a total of four encounters between the police and Menifee, but Jackson's testimony regarding two of those encounters was stricken because Menifee was a juvenile at the time they occurred.

[4] Jackson presumably meant the vehicle's window, since Menifee and Taylor were charged with burglarizing the vehicle not vandalizing it.

7

Based on the police reports Jackson had reviewed regarding Menifee's criminal record, as well as his tattoos and the facts of the instant offense, Jackson opined that Menifee was "an active associate of Double Rock criminal street gang." On cross-examination, Jackson testified that, absent the facts of the current offense, Menifee would be an associate, rather than a member of Double Rock. Taking the current offense into account, however, Jackson would consider Menifee to be a member of Double Rock. Jackson admitted that, to his knowledge, there was no record that Menifee admitted to membership in any gang when he was arrested in 2013 or at any other time.

Based on a hypothetical which tracked the facts of this case, Jackson opined that such an offense would be committed "for the benefit of, at the direction of, and in association for the Double Rock criminal street gang." The offense would benefit the gang because the proceeds included money and marijuana, which are of use "immediately out on the street." For the purposes of this hypothetical, which specified that the offense was committed by four members of Double Rock and one associate, Jackson assumed that Menifee was an associate of Double Rock.

The trial court held Menifee and his codefendants to answer on all charges.

E.     *Section 995 motion to dismiss and the writ petition*

On August 20, 2019, Menifee moved to dismiss count 8 and the gang enhancement allegations pursuant to section 995 (995 motion), arguing that there was insufficient evidence to hold him to answer because Jackson's testimony should have been excluded under *Sanchez*.[5]

_____

[5] Normally, we will not review the denial of a 995 motion by pretrial writ unless the motion was brought within 60 days of a defendant's arraignment. (§ 1510.) Given the unique circumstances of this case, the Attorney General concedes that the 995 motion was nonetheless timely. Retained trial counsel was removed in April 2019 because: (1) he was unprepared to proceed to trial even though the case had been pending for approximately five-and-a-half years; (2) he had engaged in a pattern of conduct designed to mislead the trial court and counsel; and (3) he had failed to provide "adequate representation [to] his client." Since appointed counsel was then confronted

8

The trial court denied the 995 motion on October 11, 2019. In making its ruling, the trial court acknowledged that it was an open question whether *Sanchez* applied to preliminary hearings but concluded it need not reach that question. Assuming that *Sanchez* applies, the trial court found there was still sufficient admissible evidence to hold Menifee to answer on the gang charge and the enhancement allegations. As to the gang charge (count 8), the trial court focused particularly on predicate offenses/pattern of criminal activity and found that gang expert testimony about predicate offenses does not violate *Sanchez* unless those offenses involved the events or participants in the case being tried.[6]

Trial was set to begin on Tuesday, November 12, 2019. After Menifee filed the instant writ petition, we stayed further proceedings and, after obtaining preliminary opposition, issued an order to show cause on April 3, 2020. The Attorney General filed a return and Menifee filed a traverse. Having reviewed the parties' briefing and the exhibits, we will deny the petition for writ of mandate and/or prohibition.

## II.    DISCUSSION

In his petition, Menifee argues that the trial court erred in denying his 995 motion on the grounds that much of Jackson's expert testimony on Double Rock was

---

with reviewing four bankers' boxes of documents in the court file, an approximately 1,200-page transcript from the preliminary hearing, and voluminous discovery materials, we agree the delay in presenting the 995 motion was justified.

[6] In its oral ruling, the trial court cited *People v. Bermudez*, a decision from the Third District Court of Appeal, in support of this point. However, on October 25, 2019, after the hearing on Menifee's 995 motion, the Court of Appeal granted rehearing in that decision, rendering it no longer citable. The substituted opinion following rehearing is *People v. Bermudez* (2020) 45 Cal.App.5th 358. The *Bermudez* court's analysis of the admissibility of a gang expert's testimony on predicate offenses, however, remained unchanged—that testimony is admissible under *Sanchez* so long as the offenses "involved neither the particular events nor participants involved in the case being tried." (*Id*. at p. 376.)

9

inadmissible, either because Jackson did not lay a sufficient foundation for it or the evidence was hearsay under *Sanchez*. In his view, there was otherwise insufficient admissible evidence to hold him to answer on the gang enhancement allegations and the substantive gang charge. Before addressing the merits of Menifee's argument, we must first decide whether *Sanchez* applies in the context of a preliminary hearing.

A. *Application of* Sanchez *to preliminary hearings*

In 2014, when the preliminary hearing was held in this case, it was established law that a gang expert could rely on hearsay statements relating to a gang's activities to form an opinion that "the crime with which the defendants were charged was a ' "classic" example of gang-related activity.' " (*People v. Stamps* (2016) 3 Cal.App.5th 988, 993.) That analysis was upended in 2016 by the California Supreme Court's decision in *Sanchez*, *supra*, 63 Cal.4th 665 which held that experts may not form an opinion based on "case-specific" out-of-court statements as those statements are, in fact, hearsay and as such are admissible only if a hearsay exception applies. (*Id.* at p. 686.) Whether "expert testimony incorporating hearsay as the basis for the expert's opinion [is admissible] depends on whether the matter the prosecution seeks to elicit is 'case-specific hearsay' or, instead, part of the 'general background information' acquired by the expert through out-of-court statements as part of the development of his or her expertise." (*Stamps*, *supra*, at p. 995.)

The *Sanchez* court described case-specific facts as "those relating to the particular events and participants alleged to have been involved in the case being tried." (*Sanchez*, *supra*, 63 Cal.4th at p. 676.) The court stressed that its decision does not affect "the traditional latitude granted to experts to describe background information" concerning the expert's "knowledge and expertise and premises generally accepted" in the expert's field (*id.* at p. 685), and that background information in a gang case may encompass "general gang behavior," including a particular gang's conduct and territory (*id.* at p. 698). The court explained further that an expert may still rely on hearsay in forming an opinion and may tell the jury in general terms that he is doing so. (*Id.* at p. 685.) But "[w]hat an

10

expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id*. at p. 686.) The *Sanchez* court concluded that the gang expert's testimony in that case, which recounted facts contained in various police reports and notices, was case-specific hearsay used to prove the intent element of the gang enhancement—that the defendant had committed the underlying crimes with intent to benefit the gang. (*Id*. at pp. 698-699; § 186.22, subd. (b)(1).)

The *Sanchez* court further held that a confrontation clause violation results when the prosecution's expert in a criminal case relates case-specific testimonial hearsay without establishing both the defendant's prior opportunity for cross-examination (or forfeiture of that right) and the declarant's unavailability. (*Sanchez*, *supra*, 63 Cal.4th at p. 686.) Guided by the holding in *Crawford v. Washington* (2004) 541 U.S. 36 that the primary object of the confrontation clause is testimonial hearsay (*id*. at p. 53), and by United States Supreme Court cases applying that holding, the *Sanchez* court concluded that "statements about a completed crime, made to an investigating officer by a nontestifying witness . . . are generally testimonial unless they are made in the context of an ongoing emergency . . . or for some primary purpose other than preserving facts for use at trial." (*Sanchez*, *supra*, at p. 694.) Further, those statements do not lose their testimonial character when summarized in an officer's report. (*Ibid*.) The *Sanchez* court concluded further that a field identification card, also memorializing police contact with gang-related individuals, would be testimonial if generated in the course of an ongoing criminal investigation. (*Id*. at p. 697.)

*Sanchez* arose in the context of a jury trial, so it is an open question whether its restrictions on the use of hearsay evidence by expert witnesses applies equally to expert testimony offered at a preliminary hearing. The prosecution argues that it does not, because the rule it states is based on the Sixth Amendment right to confront witnesses, and the right to confrontation has long been held to apply only to trials. We think that is

11

too narrow a reading of *Sanchez* as it overlooks the fact that what gives rise to the confrontation clause violation in that decision is an expert's reliance on hearsay evidence to form an opinion. Thus, *Sanchez* is, at its heart, based on evidentiary considerations. We now look at the rules of evidence which apply to preliminary hearings.

The Evidence Code governs the admissibility of evidence at preliminary hearings. (*People v. Chapple* (2006) 138 Cal.App.4th 540, 546 (*Chapple*); Evid. Code, § 300 ["Except as otherwise provided by statute, this code applies in every action before the Supreme Court or a court of appeal or superior court, including proceedings in such actions conducted by a referee, court commissioner, or similar officer, but does not apply in grand jury proceedings."].) "Special rules apply to the admission of hearsay evidence at a preliminary hearing in a criminal case." (*Correa v. Superior Court* (2002) 27 Cal.4th 444, 451.) Specifically, section 872, subdivision (b)—enacted in 1990 as part of Proposition 115—permits " 'the finding of probable cause [to] be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted,' " so long as the officer has certain specified qualifications. (*Correa*, *supra*, at pp. 451-452.) Even where those qualifications are met, however, the statute does *not* permit an officer who lacks personal knowledge of the crime or the circumstances under which the out-of-court statement was made to "simply read a police report that was prepared by an absent investigating officer." (*Id*. at p. 452.)

As the California Supreme Court explained, "[p]roperly construed, Proposition 115 does not authorize a finding of probable cause based on the testimony of a noninvestigating officer or 'reader' merely reciting the police report of an investigating officer." (*Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1072 (*Whitman*).) Rather, "the probable intent of the framers of the measure was to allow a properly qualified investigating officer to relate out-of-court statements by crime victims or witnesses, including other law enforcement personnel, without requiring the victims' or

12

witnesses' presence in court." (*Ibid*.) As a result, "[t]he testifying officer . . . must not be a mere reader but must have sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement." (*Id*. at pp. 1072-1073.)

*Whitman*'s requirement of "sufficient knowledge" (*Whitman, supra*, 54 Cal.3d at p. 1072) is echoed in *Sanchez*, which held, "When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay." (*Sanchez, supra*, 63 Cal.4th at p. 686.) Consequently, reading *Whitman* and *Sanchez* together, we see no reason why *Sanchez*'s restrictions on an expert's use of hearsay evidence should not apply to preliminary hearings as well.

B. *Legal principles applying to section 995 motions*

"To prevail on a section 995 motion to set aside an information, the defendant must establish that he was 'committed without reasonable or probable cause.' (§ 995, subd. (a)(2)(B).) To establish probable cause sufficient to withstand a section 995 motion to dismiss, the People must make some showing as to the existence of each element of the charged offense. [Citation.] 'Evidence that will justify a prosecution need not be sufficient to support a conviction. [Citations.] " 'Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' " ' " (*Chapple, supra*, 138 Cal.App.4th at p. 545.) Thus, "[o]n a motion to dismiss a count under . . . section 995, we ask only 'whether the evidence is such that "a reasonable person could harbor a strong suspicion of the defendant's guilt." ' [Citation.] This is an 'exceedingly low' standard . . . ." (*People v. Superior Court* (*Sahlolbei*) (2017) 3 Cal.5th 230, 245.) "Upon an accused's timely motion, an indictment must be set aside if the sole proof of guilt consists of legally incompetent evidence." (*People v. Anderson* (1968) 70 Cal.2d 15, 22.)

13

C.       *Evidence of Double Rock's Primary Activities*

In order to prove the gang enhancements and substantive gang participation charged in the information, the People must establish the existence of a criminal street gang.  Section 186.22, subdivision (f) defines "criminal street gang" to mean "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity."  The criminal acts enumerated in section 186.22, subdivision (e) include robberies, homicides, attempted homicides, possession and possession for sale of controlled substances, witness intimidation, burglaries, possession of firearms, and possession of firearms.  (§ 186.22, subd. (e)(2), (3), (4), (8), (11), (23), & (31).)

Menifee contends the People failed to present admissible evidence that Double Rock has as one of its primary activities the commission of one or more of the criminal acts enumerated in section 186.22, subdivision (e).  Although Jackson testified, "burglaries, robberies, auto burglaries, narcotics sales, possession for sales, possession of firearms, possession of firearms by convicted felons, homicides, attempted homicides, witness intimidation, threats . . . [¶] [and] home invasions" are primary Double Rock activities, Menifee argues there was no foundation to support Jackson's conclusory opinion.  We disagree.

Our Supreme Court has explained that "[t]he phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations.  [Citation.]  That definition would necessarily exclude the occasional commission of those crimes by the group's members."  (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.)  At trial, "[s]ufficient proof of the gang's primary activities might consist of evidence that the group's members

14

*consistently and repeatedly* have committed criminal activity listed in the gang statute. Also sufficient might be expert testimony, as occurred in [*People v*.] *Gardeley* [(1996)] 14 Cal.4th 605.  There, a police gang expert testified that the gang of which defendant Gardeley had for nine years been a member was primarily engaged in the sale of narcotics and witness intimidation, both statutorily enumerated felonies.  (See § 186.22, subd. (e)(4) & (8).)  The gang expert based his opinion on conversations he had with Gardeley and fellow gang members, and on 'his personal investigations of hundreds of crimes committed by gang members,' together with information from colleagues in his own police department and other law enforcement agencies.  (*Gardeley*, *supra*, at p. 620.)" (*Id.* at p. 324.)

" 'The requirements for expert testimony are that it relate to a subject sufficiently beyond common experience as to assist the trier of fact and be based on matter that is reasonably relied upon by an expert in forming an opinion on the subject to which his or her testimony relates.' " (*People v*. *Polk* (2019) 36 Cal.App.5th 340, 353.)  "The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion." (*People v. McDowell* (2012) 54 Cal.4th 395, 426.)  "[W]hen the proposed expert testimony rests on an assumption without any support in the trial evidence, the court . . . abuse[s] its discretion in admitting it.  Such testimony has little or no probative value, bears the potential to mislead the jury into accepting the unsupported assumption and drawing from it unwarranted conclusions, and thus cannot significantly 'help the trier of fact evaluate the issues it must decide.' " (*People v. Moore* (2011) 51 Cal.4th 386, 406.)

Menifee argues that Jackson's opinion as to Double Rock's primary activities lacked foundation because he did not explicitly state the basis for that opinion.  This is incorrect, because the record supports the inference that Jackson's knowledge regarding Double Rock's activities came from his formal training on San Francisco criminal street

15

gangs as well as his years of experience investigating gang-related crime in that jurisdiction.

*In re Alexander L.* (2007) 149 Cal.App.4th 605, on which Menifee relies, is distinguishable. There, a wardship petition alleged that the minor had committed three counts of vandalism and further alleged gang enhancements. (*Id*. at p. 609.) At the jurisdictional hearing, the gang expert testified as follows regarding the primary activities of the gang at issue: " 'I know they've committed quite a few assaults with a deadly weapon, several assaults. I know they've been involved in murders. [¶] I know they've been involved with auto thefts, auto/vehicle burglaries, felony graffiti, narcotic violations.' " (*Id*. at p. 611.) "No specifics were elicited as to the circumstances of these crimes, or where, when, or how [the gang expert] had obtained the information." (*Id*. at pp. 611-612.) The court of appeal concluded that the expert's "testimony lacked an adequate foundation." (*Id*. at p. 612.)

In this case, Jackson testified at length about his background in law enforcement, including his training and experience with gangs in San Francisco. The trial court designated Jackson as an expert on Double Rock specifically and San Francisco gangs in general. Unlike the deputy in *Alexander L.*, Jackson testified that he was personally familiar with Double Rock and other gangs operating in San Francisco and it was part of his job to remain updated on San Francisco gang activities. He had served on the gang task force for nine years, had been the lead investigator on approximately 100 gang-related crimes, and had spoken to hundreds of gang members over that time. As a result, the concerns in *Alexander L.* are not present here. Jackson's experience and background, which qualified him as an expert witness, provided sufficient foundation to make his opinions on Double Rock's primary activities reliable.

D. *Evidence of Double Rock's predicate offenses and pattern of gang activity*

Menifee argues that Jackson's testimony relating the predicate offenses was inadmissible hearsay under *Sanchez*. He argues that facts establishing predicate offenses

16

are case specific because such offenses are necessary elements of the gang enhancement. As a result, Jackson's testimony on the predicate offenses was inadmissible because: (1) he had no personal knowledge of the predicate offenses but obtained the facts from hearsay sources; and (2) the hearsay was testimonial because the information on which Jackson relied was gathered by officers acting in an investigatory capacity for purposes of prosecution. We agree that Jackson's testimony was insufficient to show more than one predicate offense committed by Double Rock gang members and this testimony alone would not be sufficient to establish the requisite "pattern of criminal gang activity." However, because other witnesses presented competent evidence to show that Double Rock members were *also* involved in the instant offense, any defect in Jackson's testimony on this element was cured.

The phrase " 'pattern of criminal gang activity' " is statutorily defined to mean "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" predicate offenses, "provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons." (§ 186.22, subd. (e).) Thus, "the requisite 'pattern of criminal gang activity' [can be proved] by evidence of 'two or more' predicate offenses committed 'on separate occasions' *or* by evidence of such offenses committed 'by two or more persons' on the same occasion." (*People v. Loeun* (1997) 17 Cal.4th 1, 10 (*Loeun*).) "[A] predicate offense may be established by evidence of the charged offense." (*People v. Tran* (2011) 51 Cal.4th 1040, 1046 (*Tran*).)

The defendant in *Sanchez* did not challenge the gang expert's testimony as it related to the existence of a criminal street gang under section 186.22, subdivision (f) (established in part by proving predicate offenses), nor did the *Sanchez* court address whether facts related to predicate offenses are case specific. There is presently a split of

17

authority on whether testimony about predicate offenses constitutes case-specific information under *Sanchez*. (Compare *People v. Meraz* (2016) 6 Cal.App.5th 1162, 1175; *People v. Vega-Robles* (2017) 9 Cal.App.5th 382, 411; *People v. Blessett* (2018) 22 Cal.App.5th 903, 945, disapproved on another ground in *People v. Perez* (2020) 9 Cal.5th 1, 14 with *People v. Thompkins* (2020) 50 Cal.App.5th 365, 411; *People v. Lara* (2017) 9 Cal.App.5th 296, 337; and *People v. Ochoa* (2017) 7 Cal.App.5th 575, 583, 588-589 (*Ochoa*).)

In our view, testimony establishing a predicate offense, including a predicate offender's gang affiliation at the time of the offense, is case specific under *Sanchez* because the facts are beyond the scope of a gang expert's general knowledge.[7] Under *Sanchez*, an expert may appropriately describe a gang's history, symbols, and general activities. However, an expert cannot rely on hearsay information gathered by other officers and memorialized in police reports and recount that as expert testimony to establish a predicate offense. The information Jackson recounted about the predicate offenses involving Jones and Bellazain—which the trial court expressly stated did not "constitute case–specific predicate offenses"—went far beyond mere commission of the offenses.[8] This evidence was simply too detailed to qualify as "background information"

---

[7] This is not to say that a gang expert may not testify about predicate offenses based on his or her personal knowledge, i.e., cases in which they were involved as investigators.

[8] For example, Jackson testified: (1) plainclothes officers observed a person approach a group of people on the street, who "raised his shirt and displayed his waistband" and, upon being chased by officers, that person "drop[ped] a .357 revolver" (exhibit 27); (2) police responding to a burglary saw a "front gate" that was "pried open," and gave chase to one suspect who discarded a semiautomatic pistol during the pursuit (exhibit 28); and (3) a police officer called for backup after observing what appeared to be "a butt of a pistol" in an individual's waistband, and after losing sight of the suspect for some period of time, officers discovered the pistol in a nearby parked vehicle (exhibit 30). Although the trial court did not state that it was relying on exhibit 29, which reflected a certified conviction of codefendant Anthony Mims, Jackson's testimony

under *Sanchez* as an appropriate subject of expert hearsay testimony. (*Sanchez*, *supra*, 63 Cal.4th at p. 676.) Given that the details related in Jackson's testimony went to specific facts about the arrests, searches, and investigations of those defendants, it is clear that Jackson's testimony was based entirely on the police reports memorializing those events, not his personal knowledge. As such, they were hearsay and should not have been admitted into evidence. (*Sanchez*, *supra*, at p. 694; *Ochoa*, *supra*, 7 Cal.App.5th at p. 583.)

Absent the evidence of the predicate offenses committed by Jones and Bellazain, the prosecution was left with only the evidence from exhibit 26, a certified conviction of Mims, one of Menifee's codefendants. Jackson's testimony regarding this conviction, while also factually detailed, was admissible because he testified that he was involved in the investigation of the underlying offense and thus had personal knowledge of those details. *One* predicate offense is, however, not sufficient to prove a " 'pattern of criminal activity' " under the statute. (§ 186.22, subd. (e).)

Of course, evidence of the charged offense can serve to establish a predicate offense (see *Tran*, *supra*, 51 Cal.4th at p. 1046), although such evidence must still be admissible under *Sanchez*. While Jackson did not testify that he was involved in the investigation of the September 12, 2013 robbery and thus had no personal knowledge of the details of that offense, several of the officers involved in investigating the instant offense, as well as other percipient witnesses, *did* testify about the crime and Mims' involvement. As a result, Jackson had personal knowledge that Mims: (1) was a member of Double Rock; and (2) was involved in the commission of the predicate offense as reflected in exhibit 26. When coupled with the investigating officers' testimony

---

regarding the details of that conviction was also inadmissible as he had no direct involvement in the investigation of the offense.

19

regarding Mims and the instant offense, there was sufficient evidence to establish Double Rock's "pattern of criminal activity." (*Louen*, *supra*, 17 Cal.4th at p. 10.)

E. *Evidence supporting the gang enhancement allegations*

Section 186.22, subdivision (b)(2) provides for enhanced sentences for gang–related crimes that are committed with the specific intent to aid crimes by gang members. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1138.) There are two prongs to the enhancement: (1) the underlying crime was "gang–related" because the defendant committed it "for the benefit of, at the direction of, or in association with any criminal street gang," and (2) the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1); *People v. Albillar* (2010) 51 Cal.4th 47, 59 (*Albillar*).) " 'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement. (*People v. Albillar*, *supra*, 51 Cal.4th at p. 63.)" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048 (*Vang*).)

However, " 'purely conclusory and factually unsupported opinions' " will not suffice to sustain the gang enhancement allegations; the expert's opinion must be firmly based on the evidence itself as well as any reasonable inferences which may be drawn from that evidence. (*People v. Perez* (2017) 18 Cal.App.5th 598, 608.) In other words, the specific facts about the offense in question must support the expert's opinion, rendered in response to a fact-based hypothetical, that the hypothetical crime was carried out to support a criminal street gang and the hypothetical defendant's intent in perpetrating the offense. (*Vang*, *supra*, 52 Cal.4th at p. 1049.)

In this case, Jackson opined that, in response to hypothetical questions mirroring the facts of the September 12, 2013 robbery, that the participants in that offense were acting for the benefit of the Double Rock street gang and with the intent to promote or assist in the criminal conduct of gang members. His testimony, which was rooted in his

20

personal knowledge of the Double Rock gang, including the knowledge that Menifee's cofedendants Anthony Mims, Samuels, and Taylor were active members of Double Rock, was sufficient to support the gang enhancement allegations under section 186.22, subdivision (b)(1).

Consequently, because the prosecution presented sufficient evidence to support the gang enhancement allegations, the trial court properly denied Menifee's section 995 motion to dismiss them.

F.      *Evidence of the knowledge element of the gang participation charge*

Menifee was charged with actively participating in a criminal street gang in violation of section 186.22, subdivision (a).  The elements of that offense are "(1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*Albillar*, *supra*, 51 Cal.4th at p. 56.)  Menifee contends the People failed to present evidence as to the second element—that he knew of Double Rock's pattern of criminal gang activity.

Here, the trial court relied on three pieces of evidence to support its conclusion that Menifee had knowledge that he was participating in a crime with gang members: (1) Menifee was convicted of possession of stolen property in relation to an auto burglary he committed in June 2013 with Taylor; (2) Menifee was "friends with Lamont Mims and with Taylor"; and (3) the two "certified copies of the convictions of Anthony Mims."[9] As discussed above, Jackson's testimony relating to one of Anthony Mims's prior convictions (i.e., exhibit 29) was not admissible under *Sanchez*.  Nor for that matter, was Jackson's testimony about the circumstances of Menifee's June 2013 auto burglary or his

---

[9] The trial court did not specify the exhibit numbers reflecting these convictions, but presumably it was referring to exhibits 26 and 29.

21

"friendship" with Mims and Taylor since that testimony was based entirely on his review of police reports, rather than his personal knowledge. Even without that evidence, however, the court still heard admissible evidence of both the predicate offense involving a member of Double Rock (i.e., exhibit 26) as well as the evidence of the charged offense. This evidence is sufficient to lead a person of ordinary caution to conscientiously entertain a strong suspicion that Menifee knew Double Rock's members engage in, or have engaged in, *two or more* predicate offenses. As a result, we conclude that the trial court properly denied Menifee's motion to dismiss count 8.

## III.   DISPOSITION

The petition for writ of mandate and/or prohibition is denied. The previously ordered temporary stay is dissolved effective upon the issuance of remittitur.

_____

Premo, Acting P.J.

WE CONCUR:

_____

Elia, J.

_____

Bamattre-Manoukian, J.

Menifee v. Superior Court
H047473

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. C1365457 |
|---|---|
| Trial Judge: | Hon. Linda R. Clark |
| Counsel for Real Party In Interest:<br>The People | Xavier Becerra<br>Attorney General<br><br>Lance E. Winters<br>Chief Assistant Attorney General<br><br>Jeffrey M. Laurence<br>Senior Assistant Attorney General<br><br>Seth K. Schalit<br>Supervising Deputy Attorney General<br><br>Laurence K. Sullivan<br>Supervising Deputy Attorney General<br><br>Gerald A. Engler<br>Deputy Attorney General |
| Counsel for Petitioner:<br>Charles Menifee III | Under appointment by the Court of<br>Appeal<br>Kendall D. Wasley<br>Stuart D. Kirchick |
| Counsel for Respondent:<br>Santa Clara County Superior Court | No appearance for respondent |

Menifee v. Superior Court
H047473